UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANTHONY ADKINS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5: 18-156-DCR |
| | ) |
| V. | ) |
| | ) |
| KROGER LIMITED PARTNERSHIP I, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the defendant's motion for judgment on the pleadings. [Record No. 23] The motion will be granted, in part, and denied, in part, for the reasons that follow.

**I.**

Plaintiff Anthony Adkins alleges that he is a former employee of Kroger Limited Partnership I ("Kroger") with "active back and shoulder impairments, which substantially limit major life activities, including but not limited to work." [Record No. 21, ¶¶ 6, 7] Adkins began a medical leave of absence from his employment on September 26, 2013. [Record No. 22-2] Kroger's leave of absence policy is contained in a collective bargaining agreement ("CBA") negotiated with its employees' union. [Record No. 22-1] The relevant provision states:

> [a] leave of absence because of sickness or non-work related injury, not to exceed ninety (90) days, shall be granted to an employee upon written request, supported by medical evidence. Extensions shall be granted up to ninety (90) days at a time, if requested in writing and supported by proper medical evidence prior to each expiration, *but in no case shall the leave exceed two (2) years in duration.*

[Record No. 22-1, p. 21 (emphasis added).]

Adkins' leave of absence was extended until December 30, 2015, in excess of the two-year limit contained in the CBA. [*See* Record No. 21, ¶ 10; Record No. 25-1.] Kroger mailed Adkins a letter on December 23, 2015, stating that, "[i]n accordance with your union contract, absences from employment due to sickness or injury shall not exceed two (2) years in length. Therefore, effective December 30, 2015 your employment with the Kroger Co will be terminated." [*See* Record No. 21, ¶ 12; Record No. 25-2.] Adkins received the letter on December 28, 2015. [Record No. 21 ¶¶ 12, 13]

The next day, Adkins obtained a note from his doctor clearing him to work one day per week as long as he did not lift, push, or pull over 20 pounds. [Record No. 25-3] He provided the note to the personnel manager at the Georgetown Kroger store, who provided it to John Mosley, the store manager. [Record No. 21, ¶¶ 14-15, 17-78] Mosley allegedly informed Adkins that "there was nothing he could do for him and he was afraid he would get hurt." [*Id.* ¶ 18]

Adkins also spoke to a co-manager who said there was a "pricing" job available that he would like Adkins to fill upon his return. [*Id.* ¶ 16] When Adkins "informed store manager John Mosley that a co-manager told him that [he] could do a pricing job," Mosley stated that he would "contact the human resources department." [*Id.* at ¶ 19] The next morning, Adkins obtained a note from his doctor clearing him to perform the pricing job, and provided the note to the personnel manager at the Georgetown Kroger. [*Id.* ¶¶ 20, 21] However, in accordance with the letter dated December 23, 2015, Adkins' employment with Kroger was terminated that same day. [*Id.* ¶¶ 12, 22]

Adkins filed this action on January 19, 2018, alleging that Kroger: (i) unlawfully discriminated against him based on his disability; (ii) failed to provide him with a reasonable accommodation or engage in an interactive process with him; (iii) is estopped from arguing that he was not otherwise qualified to return to work in the pricing job; and (iv) caused him to incur attorney's fees and costs. [*Id.* ¶¶ 23-38] Kroger has moved for judgment on the pleadings, arguing that Adkins has failed to state a disability discrimination or reasonable accommodation claim, and that his estoppel and attorney's fees claims are not independent claims recognized by Kentucky law. [Record No. 23] Kroger also argues that Adkins' claims are preempted by the Labor Management Relations Act ("LMRA") and barred by the six-month statute of limitations applicable to LMRA claims. [*Id.*]

**II.**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). Under that standard, the Court must determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although the Complaint need not contain "detailed factual allegations" to satisfy the plausibility standard, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Further, while the Court is required to accept all of the plaintiff's factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In general, where "matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "[H]owever, documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Accordingly, the Court may consider the documents attached to the defendant's answer without converting the defendant's motion to a summary judgment motion. [*See* Record Nos. 22-1, 22-2, 22-3.]

"In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d 327; *see also In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (considering exhibits attached to the parties' briefs on a motion to dismiss). Accordingly, the Court may consider the documents referenced in Adkins' Amended Complaint, and attached to his response to the defendant's motion, without converting the defendant's motion into one for summary judgment.[1] [*See* Record No. 25-1 (providing the letter approving the medical leave of absence referenced in Record No. 21, ¶ 11); Record No. 25-2 (providing the letter referenced in Record No. 21, ¶ 12); Record No. 25-3 (providing the

---

[1] The Court will consider these documents because they flesh out the factual allegations contained in the Amended Complaint. But none of the legal conclusions reached in this Memorandum Opinion and Order hinge on the information contained in these documents.

medical certification referenced in Record No. 21, ¶ 14); Record No. 25-4 (providing the medical certification referenced in Record No. 21, ¶ 20).]

**III.**

The first issue to be addressed is whether the plaintiff's disability discrimination and reasonable accommodation claims are preempted by § 301 of the LMRA. The defendant argues that these claims are preempted, and that they are consequently time-barred under the six-month statute of limitations applicable to § 301 claims. *See Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238 (6th Cir. 1993) (citing *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 169-72 (1983)).

Under § 301 of the LMRA, "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). "The Supreme Court has held many times that § 301 of the LMRA requires that all claims, state or federal, whose resolution depends on the interpretation of a collective bargaining agreement be preempted by federal law." *O'Shea v. Detroit News*, 887 F.2d 683, 686 (6th Cir. 1989). However, § 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985). The Sixth Circuit has adopted a two-step inquiry to determine whether a state-law claim is sufficiently "independent" of a CBA to survive preemption. *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004).

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement,

the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Id.* (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citations omitted).

Applying this two-step inquiry, Adkins' claims for disability discrimination and failure to accommodate under Kentucky Revised Statutes ("KRS") 344.040(1)(a), are not preempted under § 301. First, Adkins' disability discrimination and reasonable accommodation claims turn on "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 407 (1988). They do not require interpretation of the CBA.

Second, the rights that Adkins invokes—the right to be free from disability discrimination and to be provided with a reasonable accommodation—do not derive from the CBA. *See Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 192 (6th Cir. 2012) (holding that "the right to be free from disability discrimination" under the ADA is "independent" from the rights created by a CBA);[2] *Smolarek*, 879 F.2d at 1332-33 ("This is not a case in which the duty claimed to have been breached (*i.e.*, the duty not to discriminate) arises solely from the collective bargaining agreement."); *O'Shea*, 887 F.2d at 687 ("Michigan employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language[.]").

Kroger attempts to avoid this precedent by arguing that any "right" that Adkins had to return to work after his leave of absence derives from the CBA. However, this is part of Kroger's *defense* that it justifiably terminated Adkins because he exceeded the leave

---

[2] The Kentucky Civil Rights Act ("KCRA") is interpreted consistent with the Americans with Disabilities Act ("ADA"). *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015).

- 6 -

authorized by the CBA, not because of his alleged disability. The fact that it may be necessary to interpret the CBA to evaluate Kroger's defense does not require preemption of Adkins' claims under § 301. *See Lingle*, 486 U.S. at 412 ("§ 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws . . . requires a state court to determine whether just cause existed to justify the discharge.") (internal quotation marks and citation omitted); *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012) (explaining that a defendant's "reliance on the CBA as a defense is, in itself, insufficient to trigger preemption"); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1333 (6th Cir. 1989) (holding that a defense based on a CBA provision governing reinstatement after a leave of absence "does not compel a finding of § 301 preemption"); *O'Shea*, 887 F.2d at 687.

### IV.

Because the plaintiff's claims are not preempted under § 301 of the LMRA, it is necessary to consider whether those claims are sufficiently plausible to survive the defendant's motion for judgment on the pleadings. The KCRA makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability." KRS 344.040(1)(a). "A disability discrimination claim may be asserted under various legal theories, including disparate treatment and failure to accommodate, and established through either direct or indirect evidence." *Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 708 (W.D. Ky. 2016) (citations omitted). The plaintiff is not required to plead a *prima facie* case of disability discrimination at this stage in the litigation. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608-10 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Instead, the plaintiff's obligation is to "allege

sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference," *id.* at 610 (quoting *Iqbal*, 556 U.S. at 678), that Kroger discharged Adkins "because [he] is a qualified individual with a disability." KRS 344.040(1)(a).

The plaintiff's disability discrimination claim passes that test. Adkins alleges that, when he attempted to return to work, a store manager told him "there was nothing he could do for him and he was afraid he would get hurt." [Record No. 21, ¶ 18] It is reasonable to infer from this allegation that Adkins was terminated because of his disability. Kroger's alternative explanation that Adkins was terminated for exceeding the leave of absence allowed by the CBA may provide a "legitimate reason for its action that is unrelated to the employee's disability." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). However, it would be premature to address that issue at this stage of the proceedings.

By contrast, Adkins' reasonable accommodation claim fails to state a plausible claim. Adkins argues that when he "informed store manager John Mosley that a co-manager told him that [he] could do a pricing job," he was, in fact, requesting a reasonable accommodation. [Record No. 21, ¶ 19] There does not appear to be any dispute that this "request" was made after the two year limit contained in the CBA had passed. [*See* Record No. 22-1, p. 21; Record No. 22-2.] But the request was made before Adkins' leave of absence—which was extended beyond the two year limit—had expired. [Record No. 21, ¶ 10; Record No. 25-1.]

This situation is factually analogous to *Wheat v. Columbus Bd. of Educ., Columbus Pub. Sch.*, 644 F. App'x 427 (6th Cir. 2016). There, an employee began a leave of absence, which was subject to a two year limit contained in a CBA, on August 3, 2009. *Id.* at 428-29. The employee was granted "[m]ultiple extensions," *id.* at 428, which extended her leave

beyond the CBA's two year limit. *Wheat v. Columbus Bd. of Educ., Columbus Pub. Sch.*, 2:13-cv-819, 2015WL 4039356, *1-2, 6 (S.D. Ohio, June 30, 2015). After the two year limit had elapsed, the employee sent the employer a letter stating that she "'[would] be returning to work' on March 26, 2012, that she [was] 'disabled,' would 'need accommodation,' and could 'perform her job with minimum to few restrictions." *Id.* (alterations adopted and added).

The Sixth Circuit held that the plaintiff's request was insufficient to carry her "burden of proposing an accommodation and proving that it is reasonable," because she "never asked the [employer] to accommodate her physical disabilities within the two-year time frame." *Wheat*, 644 F. App'x at 430 (quotations and citations omitted). The Court explained that, "[w]hen she demanded to return to work some seven months after the two-year limit expired, the [employer] was not obliged to exempt her from its contractual leave policy." *Id.* Further, the plaintiff's claim that her employer failed to engage in an interactive process regarding a reasonable accommodation "[rang] hollow because, again, she never requested a reasonable accommodation during the two years she was on leave." *Id.*

Here, like in *Wheat*, Adkins has failed to allege that he made any request for a reasonable accommodation before the two-year limit in the CBA expired. Accordingly, his claims for failure to provide a reasonable accommodation and to engage in an interactive process do not state a plausible claim for relief and will be dismissed.

## V.

That leaves only Adkins' claims for estoppel and attorney's fees. In support of his estoppel claim, Adkins alleges that "a co-manager at the Georgetown Kroger store . . . told him that a 'pricing' job was open that he would like him to do upon his return." [Record No. 21, ¶ 16] In Adkins' view, this statement was "intended or reasonably expected . . . to influence

[him] to believe he would be returned to work in that job." [*Id.* ¶ 31] Adkins alleges that he "relied in good faith" on this representation, resulting in "a detrimental change in position." [*Id.* ¶¶ 34, 35] For these reasons, he claims, the defendant should be "estopped from denying [that he] was otherwise qualified to return to work in the 'pricing job.'" [*Id.* ¶ 37]

Although the legal basis for this claim is unclear, it appears that Adkins intends to assert an equitable estoppel claim. [*See* Record No. 25, pp. 7-8.]

> The essential elements of equitable estoppel are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Weiand v. Bd. of Trs. of Kentucky Ret. Sys.*, 25 S.W.3d 88, 91 (2000) (quotation and citation omitted; alteration adopted).

Adkins' equitable estoppel claim is not presented as an affirmative claim to relief. Instead, it is presented as a *defense* to the defendant's *possible argument* that he was not otherwise qualified to return to work in the pricing job. [Record No. 21, ¶ 36] Because the defendant has not made that argument at this time, and Adkins' claim does not seek any affirmative relief, it will be denied.[3]

---

[3] Further, Adkins has not alleged sufficient facts to state an equitable estoppel claim. His Amended Complaint alleges, in conclusory terms, that each of the required elements have been satisfied. [*See* Record No. 21, ¶¶ 30-35.] But these allegations are not factually supported. In particular, Adkins asserts in his response to the defendant's motion that he "relied on" the co-manager's statement by "return[ing] to his doctor to obtain a specific medical clearance for

Finally, KRS 344.450 allows, as a remedy for a separate violation of the KCRA, "a reasonable fee for the plaintiff's attorney." However, that provision does not create an independent cause of action. Although the plaintiff may be entitled to attorney's fees if he prevails on his disability discrimination claim, his request for attorney's fees is not properly stated as a separate claim. Accordingly, that claim will be dismissed.

## VI.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The defendant's motion for judgment on the pleadings [Record No. 23] is **GRANTED**, in part, and **DENIED**, in part.

2. The plaintiff's claims for failure to provide a reasonable accommodation and failure to engage in an interactive process, equitable estoppel, and attorney's fees [Record No. 21, ¶¶ 26-38] are **DISMISSED** with prejudice.

This 11th day of June, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[the pricing] job, which he immediately presented to his employer." [Record No. 25, ¶ 8] But he has not alleged, in his Amended Complaint or elsewhere, any facts demonstrating that this alleged reliance resulted in a "change [of his] position or status . . . to his injury, detriment, or prejudice." *Weiand*, 25 S.W.3d at 91.