UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ANTHONY ADKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-156-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KROGER LIMITED PARTNERSHIP I, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Anthony Adkins alleges that his former employer, Defendant Kroger Limited Partnership I ("Kroger"), discriminated against him because of his disability in violation of the Kentucky Civil Rights Act. Kroger's motion for summary judgment [Record No. 38] will be granted because Adkins has not provided any direct evidence of discrimination and he cannot demonstrate a prima facie case of disability discrimination. Further, Kroger has demonstrated that Adkins was terminated for a legitimate, nondiscriminatory reason and Adkins has not offered evidence that Kroger's reason for termination was a pretext.

**I.**

Adkins alleges that he suffers from back and shoulder impairments that interfere with major life activities, including his ability to work. [Record No. 21, p. 2] He began a medical leave of absence from his employment as a grocery clerk with Kroger on September 26, 2013, due to these problems. [Record Nos. 22-2; 40-1, p. 30] Kroger's leave of absence policy is included in a collective bargaining agreement ("CBA") negotiated with its employees' union. [Record No. 9-1] The policy states that:

[a] leave of absence because of sickness or non-work related injury, not to exceed ninety (90) days, shall be granted to an employee upon written request, supported by medical evidence. Extensions shall be granted up to ninety (90) days at a time, if requested in writing and supported by proper medical evidence prior to each expiration, but in no case shall the leave exceed two (2) years in duration.

[Record No. 9-1, p. 11]

Kroger extended Adkins' leave of absence until December 30, 2015, which was beyond the two-year limit contained in the CBA. [*See* Record No. 38-2, p. 6.] The company mailed Adkins a letter on December 23, 2015, stating "[i]n accordance with your union contract, absences from employment due to sickness or injury shall not exceed two (2) years in length. Therefore, effective December 30, 2015 your employment with the Kroger Co will be terminated." [Record No. 38-2, p. 7] Adkins received the letter on December 28, 2015. [Record No. 21 p. 3]

Adkins gave his supervisor a return to work form clearing him to work one day a week on December 29, 2015. [Record No. 38-2, p. 13] His store manager, John Mosley, was given his medical certification on December 29, 2015, but Mosley told Adkins there was "nothing he had for [him] to do" and he was "afraid [he] would get hurt." [Record No. 39-1, p. 23-24] Adkins also spoke to a co-manager who said there was a pricing job available. [Record No. 39-1, p. 24-25] Adkins told Mosley about the pricing job, and Mosley noted that he would contact the human resources department and inform Adkins of its response. [Record No. 39-1, p. 24, 26] Adkins obtained another note from his doctor on December 30, 2015, clearing him to perform the pricing job. [Record No. 15-3] He subsequently gave the note to Kroger's personnel manager. [Record No. 39-1, p. 27] However, in accordance with the letter dated December 23, 2015, Adkins was terminated that same day. [*See* Record No. 32-2, p. 7.]

Adkins filed suit in state court on January 19, 2018. Kroger then removed the case to this Court. [Record No. 1] Adkins subsequently filed a verified amended complaint, alleging that Kroger: (i) unlawfully discriminated against him based on his disability; (ii) failed to provide him with a reasonable accommodation or engage in an interactive process with him; (iii) is estopped from arguing that he was not otherwise qualified to return to work in the pricing job; and (iv) caused him to incur attorney's fees and costs. [Record No. 21]

Kroger's earlier motion for judgment on the pleadings was granted, in part, and denied, in part, on June 11, 2018. [Record No. 28] The Court dismissed Adkins' claims for failure to provide a reasonable accommodation and to engage in an interactive process, equitable estoppel, and attorney's fees. [Record No. 28, p. 11] The Court further denied Adkins' motion for reconsideration of the motion for judgment on the pleadings. [Record No. 44] Thus, the only remaining issue involves Adkins' claim for disability discrimination.

## II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.

### III.

Adkins asserts that Kroger unlawfully discriminated against him by terminating him because of his disability. However, there is no genuine issue of material fact and Kroger is entitled to summary judgment as a matter of law.

The Kentucky Civil Rights Act ("KCRA") makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability." K.R.S. § 344.040(1)(a). The KCRA is interpreted consistent with the Americans with Disabilities Act ("ADA"); therefore, KCRA cases can be analyzed by reference to the ADA. *See Brohm v. JH Props.,* 149 F.3d 517, 520-21 (6th Cir. 1998); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015).

A plaintiff can prove that his employer discriminated against him on the basis of a disability in two ways: through direct evidence of such discrimination or through circumstantial evidence following the framework set out in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973). *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996) (overruled on other grounds). Under either test, the plaintiff bears the burden of first establishing that he is "disabled." *See id*. at 1186. The defendant does not argue this point. As a result, the Court assumes that this requirement is satisfied.

### a. Adkins Does Not Provide Any Direct Evidence of Disability Discrimination.

The first way a plaintiff can show "unlawful discrimination is by introducing direct evidence of intentional discrimination, including evidence that the employer relied on the plaintiff's disability in making its employment decision." *Merrill v. Burke E. Port Mach. Co*, 159 F. App'x 676, 678 (6th Cir. 2005). If the plaintiff provides direct evidence of discrimination, he must show that he is "disabled, [but] otherwise qualified to perform the essential functions of the position, with or without accommodation, and suffered adverse employment action because of his [] disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). The employer then "bears the burden of proving that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the employer." *Id*. (internal citations and quotations omitted).

"Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011) (internal citations and quotations omitted); *see also Merrill*, 159 F. App'x at 679. "Direct evidence is evidence that proves the existence of the fact without requiring any inferences." *Merrill*, 159 F. App'x at 679 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004)).

Adkins points to John Mosley's alleged statement that he feared Adkins would get hurt. [Record No. 39-1, p. 24] But Mosley was a low-level supervisor. The Sixth Circuit "has held

- 5 -

that comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (discussing direct evidence of racial discrimination under Title VII); *see also Richardson v. Wal-Mart Stores, Inc.,* 836 F.3d 698, 703 (6th Cir. 2016). Mosley did not have the authority to terminate Adkins and was not the person who made the actual decision to end Adkins' employment. [Record No. 40-1, p. 38-39]

Second, Mosley's alleged statement was unrelated to the decision to terminate Adkins. The plaintiff argues that Mosley had the ability to influence the decision-making process and that his employment was explicitly denied based on the defendant's fear he would get hurt. [Record No. 43, p. 6] However, the decision to terminate Adkins was made on or before December 23, 2015. [*See* Record No. 38-2.] Mosley's statement was not made until December 29, 2015. [Record No. 39-1, p. 23-26] Thus, the decision to terminate the plaintiff was separate from the expression of concern articulated by Mosley.

Finally, Mosley's alleged statement requires an inference to establish that Adkins was fired because he was disabled. An example of direct evidence would be an employer telling an employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). The statement here was that Moseley was afraid Adkins would get hurt. [Record No. 39-1, p. 24] Adkins' reliance on this statement would require the jury to infer that Mosley was afraid that Adkins would get hurt because of his disability and that he was fired because of his disability.

The plaintiff has not provided direct evidence of discrimination.

### b. Adkins Cannot Establish A Prima Facie Case Of Disability Discrimination.

If there is no direct evidence of discrimination to state a claim under the ADA, a plaintiff must establish that: (1) he is disabled; (2) he "is otherwise qualified for the position with or without 'reasonable' accommodation"; (3) he experienced an adverse employment action; (4) "the employer knew or had reason to know of his . . . disability"; and (5) after his termination, "the position remained open, or the disabled individual was replaced." *Ferrari,* 826 F.3d at 891 (citing *Monette,* 90 F.3d at 1185). "An individual is otherwise qualified, if he or she can perform the essential functions of the job with or without reasonable accommodation." *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (internal citations and quotations omitted).

Kroger argues that Adkins was not otherwise qualified because he was unable to perform his essential job functions as a grocery clerk.[1] Essential job functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential when " the position exists to perform that function." *Keith,* 703 F.3d at 925.

> Factors to consider when determining whether a job function is essential to the position include: (1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs.

*Id*. at 925-26. "The determination of whether physical qualifications are essential functions of a job requires the court to engage in a highly *fact-specific* inquiry." *Hall v. U.S. Postal*

---

[1] Kroger also argues that Adkins did not provide evidence that the position remained open or that he was replaced with someone who was not disabled. Adkins does not dispute Kroger's suggestion that the position did not remain open or that he was replaced by an individual who was not disabled.

- 7 -

*Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (emphasis in original). This fact-specific inquiry is typically not suitable for resolution on a motion of summary judgment if the evidence on the issue is "mixed." *Keith*, 703 F.3d at 926; *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014).

Here, the plaintiff cannot perform the essential functions of his job and the evidence is not mixed. The written job description for a grocery clerk includes the essential job function to "label, stock, and inventory department merchandise." [Record No. 38-2, p. 8] The physical demand analysis for a grocery clerk includes lifting and carrying an average weight of 25 pounds and a max weight of 50 pounds. [Record No. 38-2, p. 10] Further, the weight range noted that a grocery clerk would have to lift less than 25 pounds continuously and between 25-50 pounds daily. [Record No. 38-2, p. 11] The defendant's return to work form on December 29, 2015, said he could not lift, push, or pull over 20 pounds. [Record No. 38-2, p. 13] The evidence demonstrates that the plaintiff could not perform the essential job functions required of a grocery clerk.

The plaintiff cannot establish a prima facie case of disability discrimination.

### c. Adkins Did Not Provide Any Evidence That The Reason Set Forth By Kroger For The Termination Was Merely Pretext.

Even if Adkins could demonstrate a prima facie case of disability discrimination, he cannot show that the reason for his termination was merely pretext. Under the *McDonnell Douglas* framework, the burden shifts to the defendant to demonstrate a legitimate reason for its actions if the plaintiff articulates a prima facie case of disability discrimination. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008). The burden of providing a legitimate, nondiscriminatory reason is not high. *Ford v. Securitas Sec. Servs. USA, Inc.,* 338

F. App'x 483, 489 (6th Cir. 2009). "The defendant bears only the burden of production; the burden of persuasion is with the plaintiff at all times." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986) (A "defendant need not persuade the [trier of fact] that it was actually motivated by the proffered reasons, but need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." (internal quotations and citations omitted)).

Once an employer provides a legitimate, nondiscriminatory reason for its actions, the employee must show that the stated reason "is merely a pretext for discrimination." *Weigel*, 302 F.3d at 378. A plaintiff can show pretext by demonstrating that the proffered reasons: (1) had no basis in fact, (2) "did not actually motivate the company's decision" or (3) were insufficient to support defendants' actions. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008). To show that the proposed reason was merely pretext, the plaintiff must provide more than mere speculation. *Hagan v. Warner/Elektra/Atl. Corp.*, 92 F. App'x 264, 268 (6th Cir. 2004). The Sixth Circuit has indicated that the plaintiff must introduce more than doubt to satisfy this burden. *Carson v. Ford Motor Co.,* 413 F. App'x 820, 824 (6th Cir. 2011).

As noted in the Court's prior memorandum opinions, this case is analogous to *Wheat v. Columbus Bd. Of Educ. Columbus Pub. Sch.*, 2015 U.S. Dist. 85185 *1 (S.D. Ohio 2015), *aff'd Wheat v. Columbus Bd. Of Educ.*, 644 F. App'x 427 (6th Cir. 2016), where the court noted that the reason for terminating the plaintiff was not pretextual. The defendant maintained the plaintiff was terminated because she exceeded the contractual two-year leave of absence limit contained in the CBA. *Id*. at *14. The plaintiff questioned whether the two-year limit in the CBA was the actual reason for the defendant's decision because the defendant approved

extensions beyond the two-year limit. *Id*. at *14-15. The court noted that the extensions beyond the two-year limit merely showed that "she received a benefit beyond what the contract required." *Id*. at *15. It concluded that the plaintiff provided "no evidence that the defendant's reasons had no basis in fact, that it did not actually motivate the [defendant's] action, or that it was insufficient to motivate the termination." *Id*. (referencing *Romans v. Michigan Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)).

Here, Adkins was terminated because he exceeded the two-year limit contained in the CBA. He contends that Kroger cannot rely on the two-year limit contained in the CBA because this Court "previously held that the determination of Mr. Adkins claims of disability discrimination arise under state law and does not require interpretation of the CBA." [Record No. 43, p. 8] However, Adkins misinterprets the prior ruling. The Court noted that interpretation of the CBA may relate to Kroger's defense, but it was premature to address the issue on the motion for judgment on the pleadings. [Record No. 28, p. 7-8] The defendant provides a legitimate reason for the adverse employment action.

Adkins offers no evidence to show that the reason set forth by Kroger had no basis in fact, that it did not actually motivate Kroger's action, or that it was insufficient to motivate the termination. The defendant provided a legitimate, nondiscriminatory reason for terminating the plaintiff and the plaintiff does not put forth any evidence that the proposed evidence was merely pretext.

## IV.

Based on the foregoing reasons and analysis, it is hereby

**ORDERED** as follows:

1. Defendant Kroger Limited Partnership I's motion for summary judgment [Record No. 38] is **GRANTED.**

2. Plaintiff Anthony Adkins' claims are **DISMISSED**, with prejudice.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: December 28, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge